Good morning, your honors. Good morning. I'm Mark Levine, the Office of the State Appellate Defender, representing John Riley, the defendant, who is appealing conviction under the aggravated kidnapping statute. He was also convicted in the same incident of home invasion, but that's not being contested here. The kidnapping charge was that he knowingly, by the use of force, carried Lisa Weeks from her bedroom to the basement of her home with the intent to secretly confine her there. There's no dispute about what happened here. It's a stipulated conversation in the bedroom about where is the safe. Did he not know? I mean, do we have evidence that he knew and he was just confirming, or is he asking her, where is the safe? Right. There were several men, our guy, Riley, he knew that the safe was in the basement. However, there are a couple of other people, and we don't really know which one asked her, where is the safe? But somebody, one of the intruders asked Ms. Weeks, where is the safe, as soon as they came in the room. They told her to take them to it. They knew it had guns, that there were guns in it. Her husband had been a hunter and had guns in the safe. The safe was located in her basement, and that's where she took them, because that's where the safe was. They needed her to open the safe for them, because they had a combination, it was a safe. And that's what she did. It took her a while to get it open, but that's ultimately what she did. They took the contents of the safe, and they left. And according to Ms. Weeks, this whole thing took about half an hour, and she testified that she ran to a neighbor's house five seconds, she said, after they left. They put a blanket over her head, or allegedly put a blanket over her head? Right. They put a, through a blanket, a blanket over her head in the basement. Now, the basement was, there's no windows, or there was windows, but you couldn't see in or out. So putting the blanket over her could not have been to conceal her, she was already concealed. It was to conceal them, as they, as they ran away. She wasn't any more concealed than the blanket over her head. I'm sorry, they put a blanket over her head to conceal them? To keep her from seeing them, apparently. I don't know, what to this blanket before? To conceal her. She's already in a place. So if somebody looks in the window, I don't. That's testimony that nobody could see in the window. Nobody already, nobody could see in the window already. Anyway, maybe we'll come back, come back to that point. This was a straightforward armed robbery. They said, opened the, pointed a gun at her, they said open the safe, she did. Now, truth in sentencing applies to armed robbery by the statute, only if the victim suffers great bodily harm. And there's no evidence of that here. She's recovering from surgery, which apparently is not the most pleasant of surgeries. Do we have any testimony that she had repercussions to her surgical wounds, or I know that, or something happened? These wounds tend to bleed, as I understand. I don't believe so. Maybe Ms. Kripke will correct me, but I don't, I don't think so. And the state did not assert that truth in sentencing, well, they asserted that truth in sentencing applies because it was aggravated kidnapping, and they didn't say anything about this other, and there was no evidence. She seems to be running around. She ran to a neighbor's house, she said. So I'm sure it hurt, but whether it was great bodily injury, we don't have a record to support that. Well, at this point, the state would not have had to put that evidence on, knowing they had 85% on the aggravated kidnapping. It would have been somewhat redundant. That's true, but we also don't know that it existed. We don't know it didn't, because there was no obligation to put that evidence on, and I think you both basically concede that should we reverse either one, reverse the aggravated kidnapping, there would be a new sentencing here. Yes. And would it be your position that all bets are off on the 23 years then? I think the state at that point, if there were evidence of great bodily harm, I think I don't see why the state couldn't put it on at that point. Beyond that, I don't know that all bets are off, although it's a little beyond the scope of what I'm here for today to commit to that. Well, that's what you're asking for. There's a new sentencing here. Precisely, right. Was there ever a bill of particulars? Not that I'm aware of. See, this is coming after the co-defendant had a full trial, so I think everybody knew the facts of the case pretty well before they got to this point. And that's why this was a stipulated bench trial, stipulating in the testimony from the Cody's trial. You cite Levy-Lombardi, but hasn't the Supreme Court adopted Levy-Lombardi without really saying that in these four factors from Smith that were first enunciated in Smith? Yes, Your Honor. Well, it's interesting how this came up, actually. The first time it came up was in 1972 or 1973 in the Canale case where the Supreme Court rejected it because the two, kidnapping and whatever the other offense was in that, had the same sentence. So the court said, we don't need this here. Later on, the statute was amended and aggravated kidnapping got a much harsher sentence than it had before. So now there's a difference. So then the court did recognize it. It recognized it in Enoch first, talked about it briefly and talked there about the history of it and how it came from New York and the purpose. That was in the dissent case. Then again in Eiler, the court makes it clear that we're accepting Levy-Lombardi. It rejected applying it in each of those cases because of the particular facts of the case, but it accepted the principle. And then in Smith, we find, of course, Smith was before that, but the court wasn't criticizing Smith for applying Levy-Lombardi. So I don't know that there's, I don't think there's any question. But in Segueda-Zubrido, the court has now adopted those four factors as basically the law in Illinois and how we're going to handle these Levy-Lombardi type situations. Yes, Your Honor. We don't really talk about Levy-Lombardi anymore. We talk about these four factors. We are talking about Levy-Lombardi because the four factors have other application. For example, when we have a one-act, one-crime situation, if our guy here, for example, had been convicted of both robbery and kidnapping and other places where a person is connected, if a defendant is convicted of two separate offenses or two offenses, the question is, are these separate offenses or is it really the same thing for one-act, one-crime purposes? And there, they're applying these four factors. They're the same four factors, but they're being used slightly differently sometimes. But yes, the point is, Levy-Lombardi is the law in Illinois. I don't think there's any question about that. What was the purpose of the stipulated bench trial? I mean, there was a full trial before of one of the co-defendants, but was it to save the court time or was it to preserve an issue that we're really not discussing here? I think both. Since all the testimony Ms. Weeks was going to testify the same as she did over there, why do it again? But it was also done to preserve a suppression issue that was—I did not raise that on appeal because it was a factual dispute and the trial court believed this one and didn't believe that one. And as Your Honor knows, that's the end of it as far as this court goes, so it wasn't worth raising it on appeal. If they're raising it, I think there's some argument that you shouldn't be here then because the sufficiency of the evidence was never an issue that you had raised. Sufficiency of the evidence, I know the state argued that in its brief and probably will argue it today. The forfeiture—sufficiency of the evidence is not something that's forfeited. The law is well settled on that. That can always be raised on appeal. It happens that they did raise sufficiency of the evidence in a boilerplate, I think. Maybe not. Step back from that. I think they did raise it in post-trial, but I wouldn't want to—I don't make that representation to court. But it doesn't matter. Whether they raised it or not, sufficiency of the evidence can always be raised on appeal. And we're raising it here because Levy-Lombardi limits the scope of the kidnapping statute, as the Supreme Court said. I think this part was in the dissent under there. Limits the scope of kidnapping to conventional kidnapping, not anything that can be stuffed within the technical compliance. I think that's the language of the court. Technical compliance with the statute while it's really, in reality, something else. And that's what the State is arguing over here, that they took her to the basement. That's true. But taking her to the basement was entirely incidental to the robbery. They had to take her to the basement. That's where the safe was. They needed her to open the safe. There was nothing—and that's what the charge was. The charge was that he asported her—the asportation, an element of the kidnapping, was they took her from the bedroom to the basement with intent to conceal her there. Couldn't she just have given them the combination rather than go to the basement with them? The combination was in the basement. It was—she testified it was stuck up on the rafters in some secret hidden place in the basement. And then they had her—they told her to open it, and she couldn't. Eventually she did. Eventually she did open it. So they needed her to be familiar with, okay, so you have this set of numbers, 5, 10, 15, 20, whatever it is. They needed her to know how to operate this safe. So once you get—let me say also that Lady Lombardi, although it comes into the state's law from New York, it's nothing exotic. It's a fundamental principle that all statutes are to be construed in a way that carries out the intent of the legislature. And the legislature intended there to be a sentencing difference between aggravated kidnapping and armed robbery. Difference is aggravated kidnapping gets truth in sentencing mandatory all the time, and armed robbery gets it only if there's great bodily harm. And here we didn't have any contention that there was great bodily harm. Now, your Honor raised that, well, maybe it could be raised on resentencing. Maybe so. I don't know. I don't know whether there's anything to raise over there. But the point is— But it would have to be— —we're standing right now, we don't have any evidence of it. It would have to be raised in the concept of a home invasion because there is no armed robbery charge here, correct? Yes. That's correct. Everything these robbers did in the so-called kidnapping as charged was necessary for the robbery. The exportation from the bedroom to the basement, the duration of the exportation—these are these four factors. The duration of the exportation was identical for the two of them. The danger to the victim was identical because it was the same act. There's nothing left over to be a kidnapping separate from the robbery. Now, your Honor mentioned a little while ago the throwing the blanket over her head. First of all, that was not the charge. That wasn't the kidnapping charge. The charge was—exact language here. He knowingly, by the use of force, carried Lisa Weeks from her bedroom to the basement with the intent to secretly confine her over there. His intent wasn't to secretly confine her. The secrecy, the concealment of the basement, the fact that there were no windows that she could see through, didn't matter. The safe was there. That's why he took her there. And this is the same as in any garden variety, if that's appropriate to say, armed robbery. A stick-up of a store where the stick-up man comes in, tells the clerk, go over there and open the cash register and give me all the money. So go over there. Now he's moved the person from one place to another. And that's all the kidnapping statute says is one place to another. Here to here, how far? It doesn't say. One place to another. Okay, so from the front of the store to behind the counter, open the cash register. Now the cash register's behind the counter. Maybe it's a little darker over there. It's a place that's a little more concealed than out in front of the windows of the store. You can think of lots and lots of examples. But he's not putting the person over there to conceal them. He's putting the person over there because that's where the cash register is. That's what he came for. And it's exactly the same here. They came for the contents of the safe. The safe happened to be in the basement. What about moving her later? Is just your position that since they didn't specifically allege that, that we can't consider them moving her from the vicinity of the safe to another place and covering her with a blanket? Two points. One is, just as you said, that that's not what they charged. Correct. The second point, though, more perhaps substantively than that, is it says this place was already secret. The basement was a secret. It was already as secret as it gets. There's no windows. You can see enough. I'm not saying that these defendants were bright defendants. They just moved her and concealed her even further. Why can we not consider that conduct? The only people they were concealing were possible people was from themselves. That assumes that they understood that nobody could see in the windows, which I think there was some dispute about whether you could see in or see out. In her testimony, she said you couldn't see out. And then they added another stipulated statement by her in which they said you couldn't see in. So I think we have both covered in the evidence. When you talk about incidental to another offense, you keep talking about armed robbery. Yes. He was not convicted of armed robbery. Right. That's the point here. He was convicted of home invasion. The state was gaming the system by charging this as aggravated kidnapping instead of charging it as a straightforward armed robbery, which is what it was. They could charge every murder as an aggravated battery, too. They're not gaming the system. Well, if they did that, they'd wind up with a lesser sentence. Aggravated battery is not as serious an offense as murder is. Here they're getting a harsher sentence by charging it this way. And they're getting a harsher sentence than the legislature intended for armed robbery. The legislature was clear. I'm sorry. Mr. Hyman, if you let me. Okay. I'm here to answer your questions, but I just wanted to acknowledge that otherwise. That these defendants, this defendant was not convicted of armed robbery, and you keep saying all of the conduct was incidental to aggravated battery, was also part of the, I said aggravated, I meant aggravated kidnapping, was incidental to the armed robbery. It was not necessarily incidental to the home invasion. Well, the home invasion is, he was convicted of that, and we're not contesting that. Right, but it's whether or not it was. This wasn't really an armed robbery, but they charged this conduct as aggravated kidnapping in order to get a harsher sentence than the legislature intended for this conduct. Because there's a complete overlap in the conduct. But at the eve of trial, they dismiss the armed robbery. Somewhat pursuant to the agreement, which is why I kind of asked you, are all bets off? It just goes back. Because the agreement was, we're going to nolly-cross these other three offenses. Was he charged with armed robbery? I thought so. If not, I'm probably mistaken. I'm not remembering that, but it could be that I'm wrong. No, probably you're right. My mistake. I'm sorry. Oh, residential burglary. Yes. You're right. Never mind. Do you have any final remarks you'd like to make? Well, because this, just a conclusion. Because the conduct here was beyond the scope or outside the scope of the kidnapping statute as limited by Levy-Lombardi, the aggravated kidnapping conviction must be reversed. for insufficient evidence. Thank you. Okay. Do you wish to argue? May it please the Court, Joan Kripke on behalf of the people of the State of Illinois Council. We have a number of disagreements with counsel's argument. The first that I raise is what they're really sort of indicating now is they're challenging the indictment for the first time on appeal. They're saying, you indicted us wrong. There was never any indication of this prior to this argument, even. Now they're saying it's an incorrect indictment. Well, that's a way to look at it. But he specifically limited, as did his brief, to the issue of sufficiency of the evidence, which would not go to the indictment. You can challenge an indictment on appeal without having it raised below. You kind of run it into a different standard of review. But it could have been raised. But regardless, the main thing that I will say is that there is not a direct overlap of armed robbery with aggravated kidnapping. And this is why I believe this is true. When they came into the house, they indeed asked the victim, where is the safe? And then they duct-taped her mouth. And she indicated it was in the basement. They then took her to the basement. Now, the defendant says they had to take her to the basement because that's where the combination to the safe was secreted. Well, that indeed is true. At that point, they could have taken the combination from the safe and taken her back upstairs. And then maybe they would have said that I would have agreed with the argument that the kidnapping, because it would have met the elements of the kidnapping, were incidental to an armed robbery or whatever, a residential burglary or whatever else they want to charge him with for having taken her possessions. However, they kept her there. And they kept her in secret there to the point when they no longer needed her. She now has the combination. They want her to open the safe. She can't do it because she needs her glasses. They didn't say to her, oh, go up and get your glasses and come back down. They held her there at gunpoint. And one of them went upstairs to get her glasses. But didn't one of them try to open the safe? Well, wait. First they had to get in the vent. She tried to open the safe. And they continued to hold her there while she tried. At this point, they don't need her to open the safe. They have the combination and they know where the safe is. But it's aggravated kidnapping that they held her there to help her open that safe. The motive was to open the safe. The motive was to get the guns. But this is aggravated kidnapping. They didn't need her there. The charge was bringing her down to the basement. They brought her down to the basement. Well, the exportation. The exportation was down to the basement. What was the intent to conceal her? Secretly confine her there. And they did that. They did that. If their intention was not to secretly confine her, then why wasn't she allowed to go up and get her own glasses? Once she had shown them where the combination was, why didn't they take her back upstairs or let her go upstairs and go back to bed? They concealed her there. They kept her there. And then when she couldn't open the safe, for reasons unknown to us, maybe she was nervous, they tried to open the safe. Why is she still being held there? Because they needed to secretly confine her there. And then when they couldn't open the safe and she eventually did, they just didn't all leave together. They kept her down there. And I would disagree that this blanket, I mean, there's no testimony that this blanket was put on her to conceal them. And the reason for that is they were wearing masks. She testified as to their racial makeup, she said, because they were also wearing shorts. And so she could guess that one fellow was a black man or several were, I can't remember, and somebody else was Hispanic, based on the skin color that she saw exposed on their legs. She didn't see their faces. So concealing their identity? No. They didn't need to throw a blanket over her for that purpose. They put that blanket over her to conceal her further, to keep her from leaving. And that's also, I looked for case law on this, but I couldn't find any. She was also confined there by her own fear of moving. And there was another way that they kept her secretly confined within her home, even if they hadn't thrown the blanket over her. They cut the phone lines and took her cell phone. She was unable to communicate with the public. And that element, that's part of the whole idea of concealment. It's not just you're secretly confining there, but you're also restricting the person's access to the public. But she said as soon as she, I would say, thought the coast was clear, as soon as she didn't hear her anymore, she got up and she ran. But at that point she was still secretly confined because she had the fear that they were still in the house. She didn't just, when they threw the blanket over her, she didn't take it off and say, hey, fellas, I'm coming upstairs with you. But they had a gun. Well, well, that was smart on her part. Therefore, she was forced to stay in that basement. She was forced to stay in that basement the whole time because they had a gun. It was an aggravated kidnapping. If she had, if they had come into the home and that safe, I mean, this is their bad luck that the safe happened to be in the basement. Have you seen any kidnappings where people were brought from one room to the house to another? Yes. Do you have some cases that they decided to bury them? I don't, but I, I, I think. If she was taken to the, to the bathroom, which is right next door to her room, would that have been a kidnapping if they shut the door? What if they moved her into the closet of that exact room? We talked about this. I would think that if they took her from her bed across the room to the closet where the safe was located and there's a window in her room and anybody can look in, I would say maybe not, not secret. But if they drew the blinds, drew the sheet, whatever, said get up, move over, open the safe and held her, kept her in that room, yes. If they had just kept her in her bed, if they had taken her to the basement, gotten the safe combination, and then taken her back upstairs, I would say that would maybe trigger Lady Lombardi. It's incident to the main motive, which was to steal these items that were in the safe. If they had taken. So, so the main motive in your argument is to confine her in the basement, not to get the stuff out of the safe. Their main motive in this whole process of taking her to the basement was to confine her in the basement. For aggravated kidnapping. But they didn't, they didn't even want the stuff in the safe. That wasn't their motive at the time. But we don't have to prove motive. We have to prove the elements of the offense. Well, you just argued motive. No, I'm arguing. No, I'm saying their motive. That's correct. I'm saying that their motive was to get the stuff. But an aggravated kidnapping, the elements of that offense where they were going to move her to that basement and and and there and to secretly confine her there. And we proved up those elements. They know that the windows were that you couldn't see in this basement. Is there evidence that there's no evidence either way? I mean, how do you because also, what if there were big picture windows and big spotlights in the basement? But I guess they're throwing a blanket over where it can find her because nobody would have seen this woman under a blanket. That's true. But there weren't. There were these those kind of basement windows where they she said people from the outside. They were covered in some way. People could not see. And she could see out. But she's all you could really see is if someone was standing there where their ankles. So it's not like people could. But if if they had taken her back upstairs, they brought her downstairs. To get the combination for the safe and then take it and brought it down and then taking her back up and kept her in the room. I would say that's unlawful restraint. That's not and that would not have been aggravated kidnapping because their intent was not to secretly confine her in the basement. If the expectation was from the bedroom downstairs, give us the combination and then they immediately took her upstairs. That wouldn't have been aggravated kidnapping. They could have charged unlawful restraint. Or if the safe is in the closet, she's in bed. She knows the combination. And they say they drag her out of the bed. They close those shades, drag her out of the bed, eight feet to the closet, say, open the safe. And they have this gun pointed at her. I would say, yes, it's aggravated kidnapping. If they let her stay in the bed and didn't move her and they still had the shades, shades closed. I say that was unlawful restraint. Aspiration is key. How do you distinguish this case from slip? I don't think. Can you? They got the guy's car. He was waiting outside. They jumped in his car and they took him on a 20 minute joyride when they tried to steal his car and steal his wallet and all that stuff. And they found that that was merely incidental to the robbery. As I think about this. Because they weren't secretly confining him in the car. I mean, they were driving around in public. I mean, secret confinement can be in a vehicle. You can confine someone in a vehicle, probably in the trunk, though. It has to be within something. I would say, in my mind, an act that's incidental is, I'm on the street, a busy street. Someone comes up to me with a gun and says, move. We're going over to the alley. They move me into the alley. No one can really see us in there. They take my watch and flee. That's incidental to an armed robbery. It's not secret confinement because they didn't keep me there. It was aspartation. Yes, it was to an area that was less public than the other place. But the whole intent was not to keep me there. These people intended to keep the victim in the basement. Otherwise, they would have let her go upstairs and get her glasses. Otherwise, they would have let her leave once they had the combination all together. Or they would have just brought her back upstairs and kept her in her bedroom. She couldn't make a phone call because they cut the wires and she had her cell phone. But they're in the middle of trying to get some guns out of her basement and they're going to let her walk upstairs to get her glasses. What purpose would that serve? Well, that's why it's an aggravated kidnapping. Or they could have taken her upstairs with their guns and held her in the bedroom. Where's the line between unlawful restraint and aggravated kidnapping? Unlawful restraint, you don't have aspartation. You hold someone against their will. You don't have the aspartation element. I mean, what's key to the kidnapping is you have to have the aspartation. Okay, but let's assume for the sake of argument that that's part of the armed robbery. They bring her to the safe. Okay. From what happens thereafter, what's the difference between unlawful restraint and aggravated kidnapping? You have to have secret confinement. You can have secret confinement and you can have unlawful. You can have someone secretly confined in their bed with the shades open, but you never moved her from the bed. The minute you move her from the bed to another room or to the closet and it's kept there in secret, that's kidnapping. But they didn't. All right, they put her in the basement. She's in the basement. They have a gun. They're trying to open the safe. Everybody's frustrated and now they're going to leave. Did they tie her up? They threw a blanket over her. But the unlawful restraint. Did they tie her legs? No. I mean, she's obviously, she's had surgery, so she may not be as spry as one would hope. But did they do anything other than, was this blanket so heavy she couldn't move? We have no idea. We don't know. But we know she did move, what she says, in about five seconds. I don't care if it's five seconds or ten minutes or whatever it is, however people perceive the amount of time. But the secret confinement had occurred long before the blanket issue had happened. It happened when they would not let her leave that basement and did not need her down there to open that safe. But they ultimately did. Nobody could open it except her. But they didn't know that. They couldn't open it and she couldn't open it and she tried one more time and got locked up. But that's not the point. That's not the point. That's irrelevant. That's called stupid defendants. Bad luck. I don't know. I mean, these are people who come out of a movie. I mean, they're not thinking. They're not intelligent people. Well, they don't appear to be intelligent people. But that's just their dumb luck. That she's incompetent, they're incompetent, everybody's nervous. I don't know why they can't open this lock. There are times I can't open my own locks. Because according to her, it's a rather complicated lock system. That's their bad luck. Well, that's why they might need her. Because it's, she said, they're not saying it was, she said it was. They may need her for all kinds of things. But that does not negate the fact that they're holding her in secret. It doesn't matter why they may need her. They're doing it. People take, I was just talking to someone in my office about this. I don't, I maybe recall years ago, a bus, a man was driving a bunch of school kids home. And somebody hijacked the bus and they put all the kids underground with this truck driver. The truck driver just died recently. The motive in doing that, the purpose, was to extort money. But who cares? They did it. They escorted the kids and the driver to another place and they held them there secretly. And they may have needed to hold these people in order to extort the money. And whether they got the money or didn't get the money is completely irrelevant to what they did. Here are the elements. Did you move them from point A to point B? Yes. And were they held below in secret? Yes. They didn't let her, I mean, if they didn't hold her, if they had allowed her to go up, if they had brought her down there and then taken her back upstairs and held her upstairs, that would have triggered, I would say, Lady Lombardi, maybe not a kidnapping, because they didn't hold her in secret. They put her back in her bedroom. They might have stood guard, one guy might have stood guard there. And, you know, she probably wouldn't have gotten out of bed. But they wanted to hold her down below. It doesn't matter that they wanted to use her expertise in opening the safe. They're just compounding their own felony by doing that. Is it significant that they move her in the basement and then throw the blanket over her head? I think it's important that they put the, I don't think it's, I mean, I agree that we did not charge that the aspiration was from one point in the basement to another. So I think that that's not necessarily relevant. I think what's relevant, I do think it's relevant that they put the blanket over her. That further discouraged her ability to communicate with the outside. Maybe it muffled sound to her. She may not have been able, maybe they were trying to do it in an attempt to figure, maybe she didn't know when they would have left the house or she would have stayed there longer. We don't know. Is it relevant to their, in other words, can they have the dual intent to secrete her in the basement as well as to move her to the safe for purposes of opening it? I'm sorry, ask me that again. Can they have a motive to move her to the basement to open the safe and a motive to move her to the basement to secretly confine her at the same time? Yes. And my question is then, can you look to the subsequent action of moving her to another place and covering her as corroboration of intent to secrete her in the first place? Probably. I mean, I think by virtue of the fact that she was never taken back upstairs and returned to where she came from, came initially, which was the bedroom, they intended to secretly conceal her in that basement. They wanted to cut off her communication from the public and in doing so they cut the phone lines and took her cell phone. And it's just a circumstance. I don't know why she had a hard time opening the safe. Maybe it was old. Who cares? It's irrelevant. I mean, what if it had opened immediately? Let's say they went down there, they didn't need her, they didn't even ask her to open the safe. They didn't get her glasses, say, you don't have your glasses? Okay, we don't need glasses. We'll open the safe. What's the combination? One to the right, two to the left, three to the right? It opens. Boom. They've still committed aggravated kidnapping. They held her in the basement while they opened the safe, away from the public. So all of the other stuff is factual stuff that's completely irrelevant to whether that kidnapping occurred. I have one other question. What were the terms of the tacit agreement between the state and the defense at the beginning of this bench trial? Well, there was a dismissal of certain counts. Right. There was an agreement that we're not going to, if he's convicted, there's not going to be, and there was pretty much a foregrown conclusion before we started that he was at least going to be convicted of a home invasion. There was an agreement for no pre-sentence report. There was an agreement for a number of years. And there was an agreement that the only issue on appeal was going to be the motion to suppress. I don't think there was an agreement. The court asked him directly, and he said, we want to know, what are you going to raise here? You only want to confine this to your motion to suppress, right? They asked him up and down and right and left. He said, that's it. That's the only issue I want to preserve. That's all I want to preserve. And I really don't think that the Levy-Lombardi issue, which I see as a statutory construction rather than an issue, has not been preserved. But even if it has, even if it can be looked at by the court, if it hasn't been waived, whatever, it doesn't apply here. This is not incident to another offense. It simply isn't. This is a full-blown kidnapping because they held her in that, the aspiration is not contested, and they held her in that basement when they didn't need to. They said they could have brought her down, here's the combination, and taken her upstairs immediately and had a guy stand in her bedroom until they had the safe open and then they all could have left. But they wanted to hold her down there. Let me see if there was something else you wanted to bring up. Anything else that your time is up? There was a question about the sentencing, and I believe regardless of how, I thought you said, Justice Jorgensen, that if there was a reversal on the kidnapping, then we would have a new sentencing hearing. I believe we said you had to have a new sentencing hearing regardless because you're not allowed to do it without the PSI. So, it's irrelevant of whether there, I mean, it's got to go back for a new sentencing hearing regardless. My question was, if you go back for a new sentencing hearing, which counsel really didn't answer either, is, are you bound by the 23 years? Was it an agreement? That's what I tried to ask that a couple of times. Oh, I see, you mean it was a 23 year, let me look at my nature of the case. It's not in there, I had it in here somewhere where I was just looking at it. Perhaps it's in my brief. I know that this was not the most detailed of transcripts. I thought I had said in here that they agreed to the 23 years. I'm pretty sure that they agreed to 23 years concurrent on both, but the aggravated kidnapping was susceptible to the 85%. As opposed to 50% day for day on the home invasion. So, if the kidnapping were to fall and you're going to do a resentencing anyhow, I believe that the 50% has to stand on the home invasion. I don't believe you can enhance it up to 85% and come in with new... I don't believe you can, but I'm not sure. I always have to look those things up. Counsel, do you wish to reply? Thank you. Thank you. On the question that you were raising right at the end about resentencing, if the aggravated kidnapping is reversed, obviously there's nothing to sentence on that. So, the only question would be what would the sentence, could they change the sentence on the home invasion? I think that's the only question. Now, this was not a plea agreement. He didn't plead guilty to this. No, but there was an agreement. There was an agreement. If somebody's convicted on a bench trial and the parties come in and say, Judge, we have an agreement for 23 years, that's an agreement. I have to tell you I don't know the answer to your question. I would think, for what that's worth, that resentencing for more than 23 years would be dependent on whether he's been banned in the Department of Corrections. But I have not researched that and I don't want to put that, I don't want to represent that to the court. Do you agree that the bare bones elements of aggravated kidnapping were met here, but your argument is leaving Lombardi meaning it was incidental or ancillary to the robbery? There may be a technical compliance with the terms, and that technical compliance is the language that's used in, I think it's in Eiler, possibly also in the other Supreme Court case. ENAC? Yeah, ENAC, right, where they say technical compliance with the statute, but really, in reality, it's something else. That's exactly where Lady Lombardi applies. If there weren't technical compliance, we wouldn't even need to talk about Lady Lombardi. If the state chose to charge only aggravated kidnapping in this case, didn't charge home invasion, didn't charge anything else, just under their discretion. They didn't charge home invasion, he was convicted of that. No, I'm saying if. If the state, in their discretion, chose only to charge aggravated kidnapping, you would be standing here saying that your client should walk because the technical compliance was met, but it was incidental to another offense that the state could have charged, even though the state has met the elements of this offense. Well, it would be a much less attractive position for you. That's what I'm trying to ask. Well, you know, I suppose yes, the answer is yes, because why did the state charge it this way in the first place? This is plainly an armed robbery. He did it. Charge armed robbery, you get a conviction, there's really no question. Instead, they're reaching for something. Suppose they charged him with terrorism or blowing up an airplane or something for which there's no support in the record. Well, he did this, but he's charged with something that he didn't do. So don't charge him with that. Charge him with what you can get a conviction on. I mean, again, you indicated that there's technically an aggravated kidnapping here, although it's incidental to the other offense. So they're charging him with something that he technically did. Well, as I say, that's exactly where the levy Lombardi comes up. And the purpose of it is to prevent the state from this kind of overly creative sentencing. The courts, in adopting levy Lombardi, are saying to prosecutors, don't do this. Charge what he actually did. Don't try to game the system and push for a sentence that's not what the legislature intended for this conduct. Just don't do that. The court rejected levy Lombardi and Eiler saying that the conduct in question was not incident to the murder. Correct. It wasn't the levy Lombardi principle, but within that case, the facts. Then do we have to look at that and say, well, murder was charged, but it should have been something else? Do we have to relate the principle to the case that is charged, home invasion? You know, what I'm saying is murder is one of the most serious charges. And that's, you know, the aspiration in that case was part of the murder and everything that happened after that. So do we have to relate it to a charge defense or can we relate it to an uncharged defense that could have been brought? Because we have a question of prosecutorial discretion here. Yes. And by levy Lombardi, they're saying that there's less prosecutorial discretion. If it's really the home invasion, first of all, the home invasion has nothing to do with this. He's convicted of that. He's going to be convicted of that. We're not challenging that. He's convicted of that. The question, the prosecutorial discretion is being limited by levy Lombardi. They're saying if it's really this, if it's really armed robbery, charge it as armed robbery. Don't try to get a harsher sentence by technical compliance with the statute. Charge what it actually is. That's what levy Lombardi says. Isn't that what the state's attorney is supposed to do, is to look at facts and charge under a statute that fits the facts? Yes. Whether it's the most serious or the least serious. Yes. It's supposed to charge. So what if your remedy here would be that we simply vacate the home invasion and allow the aggravated kidnapping to stand? If he's technically guilty of that, the evidence is there. Say, all right, if it's incident to another offense, we'll grant you that. We'll vacate the home invasion. Isn't the remedy cured? I mean, I'm sorry, isn't your remedy then met? Well, the home invasion was based on, I think, biting her lip. And it's facts that don't have anything to do with this. The two offenses that are relevant here are aggravated kidnapping that he was charged with and armed robbery that he did that he wasn't charged with. The home invasion, yes, he did it. He's convicted of it. We're not talking about that. So I'm missing your point, I'm afraid. Well, you conceded that the bare bones of aggravated kidnapping occurred here. Well, technically, whatever you want to call it. Let me say that as an even if, because my brief argued that they didn't prove the intent to conceal her. That's not why they took her to the basement. Okay, so you're not conceding. I'm saying even if the bare bones were met, Levy-Lombardi steps in and requires the reversal. Because armed robbery, which you concede your client committed, is a lesser sentence. So is the lesson here that beware state's attorney, charge the least onerous offense, not the most. Only where there's this situation where you've got, I think only in a Levy-Lombardi situation, not in general. There's nothing other than the armed robbery left over for the kidnapping. In the legislature, in this case, between these two specific situations. What you're saying, Levy-Lombardi says, state's attorney, you cannot exercise your discretion to charge as you see fit. You have to charge the lesser, I'll say lesser offense, but what I mean is lesser sentence. Well, see here, the legislature spoke specifically to the kind of sentence, specifically for aggravated kidnapping and armed robbery. One gets an 85% and the other's a 50% unless there's bodily harm. So in this case, between these two, if there's not something left over when you get done looking at what he did for the robbery. Unless there's something left over, like in some of the murder cases where they held the person for a long time before killing her. These other awful facts, which we don't have here. Unless you've got something left over to hang a kidnapping on, you better charge it as the lesser. Because the legislature determined that if it's a robbery, you're going to get a 50% sentence. And only if it's not an 85% sentence. That's what the legislature said. Prosecutorial discretion, the prosecutor's got to charge within the bounds set by the legislature. And here, that's what they intended. What we've got here is a prosecutor trying to avoid the intent of the legislature by charging this. Let me give another example if I might. Arson is defined as destroying property by means of an explosion, by fire or explosion. Well, when you're out in the country, you often will see a stop sign with a hole in it. Somebody shot a hole through it. Okay, well, how'd the hole get through? They shot it. That's by means of an explosion in the gun that propels the bullet to go through the stop sign. But who thinks that this is arson? Now, that might be a little bit far afield. Just a wee bit. But my point in raising that is to talk about the technical compliance where you can say, well, yeah, I can kind of see how you might say that. But that doesn't mean that's what the legislature intended. But in your analysis, of course, the stop sign is state-supported property, so there would be something left over. For an arson charge? Well, the stop sign is state-supported property, so that's a whole other statute. An FBA charge, just like here. Do you agree or disagree that it's within our power to reduce this conviction from aggravated kidnapping to unlawful restraint? Yes, I believe, I haven't researched that, but I believe unlawful restraint is a lesser-included offense. And if it's a lesser-included offense, of course the court can reduce it, yes. Could we reinstate the armed robbery that was never charged? Because that really is the thrust of your argument. It was never charged. Can you reinstate armed robberies? Well, that's my point, is you're arguing that the state's attorney, so if I'm a state's attorney, I read this case, if we rule as you have indicated, I'm going to say, boy, I better charge every single rung in the ladder all the way to aggravated kidnapping because, you know, gee, if the aggravated kidnapping comes out, I didn't charge the armed robbery, so now I'm out of the box. Now I'm all the way down to unlawful restraint, for example. Is that really what we're seeing? No, it's not, because what we're saying over here is that they shouldn't charge things that are not, that are so divorced from reality, even if, yeah, I can kind of see how you might say that, but statutes are interpreted by what was the legislature intending over here? It's a fundamental, we always say this whenever we're construing a statute, what did the legislature really have in mind? We're not looking for literal language that, yeah, I can kind of see, no. What did the legislature have in mind? Over here, the legislature had in mind for an armed robbery, a 50% sentence unless there's great bodily harm, and a harsher sentence for aggravated kidnapping. So that's what the legislature had in mind. So now let's look at this, apply the common sense. How does an ordinary person look at this? Was this kidnapping or was this armed robbery? It was a plainly armed robbery. There's nothing else left over after you get done with the elements in the armed robbery to find a kidnapping. Certainly she was confined in the basement. Certainly you couldn't see in or out of the basement. But they didn't take her there because it was a secret place. That wasn't their intent, and that's the first argument in my brief. That wasn't their intent to secretly confine her in the basement. Their intent was to get the stuff in the safe, and they needed her help to get it. So when you indicated earlier that there may have been a technical compliance with violation of the statute here, you're really not arguing that. You're arguing there wasn't a violation of the statute because there was no intent. The intent element was not meant by sufficient evidence. And I'm arguing that even if there was a technical compliance, it's an even if argument rather than that's it. All right. Any other questions? Thank you very much. Thank you.